UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| v. | § | CRIMINAL NO. 4:19-CR-28-SDJ |
| | § | |
| DONNA THOMAS (3) | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Donna Thomas's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A). (Dkt. #199). The Government has responded in opposition. (Dkt. #201). Thomas has filed a supplement in support of her motion, (Dkt. #212), and the Government has filed a supplemental response as well, (Dkt. #214). Also before the Court is the Government's Motion to Seal, (Dkt. #200), which motion seeks to seal Thomas's medical records that were submitted by the Government.

The Court, having considered the parties' filings, the record, and the applicable law, will **DENY** Thomas's Motion for Sentence Reduction, (Dkt. #199), and will **GRANT** the Government's Motion to Seal, (Dkt. #200).

### I. BACKGROUND

Thomas is currently serving a 188-month term of imprisonment at FMC Carswell for conspiracy to possess with the intent to manufacture and distribute methamphetamine, in violation of 21 U.S.C. § 846. Her anticipated release date is July 30, 2032. Citing her many health conditions and vulnerability to COVID-19, Thomas requests that the Court reduce her sentence to time served and order her released from prison.

1

Thomas submitted a request for compassionate release to her warden on July 11, 2020, due to the then-ongoing COVID-19 pandemic coupled with her health issues of COPD, asthma, emphysema, "heart troubles," and cirrhosis of the liver. (Dkt. #214-1 at 2). On July 19, 2020, Thomas's warden denied her request for a compassionate release, stating that her "legitimate concerns and fears" about the virus did not "warrant an early release from [her] sentence." (Dkt. #199-4 at 7). Thomas subsequently filed additional administrative appeals. (Dkt. #199-4 at 8, 11). In these appeals, Thomas asserts, in addition to the grounds previously raised in her original request, that she suffers from seizures, obesity, high blood pressure, and that she is oxygen dependent. (Dkt. #199-4 at 8, 11). These appeals were also denied. (Dkt. #199-4 at 10).

Approximately one and a half years after her initial request to her warden, and following the completion of the internal appeals process within her prison, Thomas filed the instant motion with this Court, seeking a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). In addition to the grounds she originally asserted to her warden and on internal appeal, Thomas now claims to also be suffering from carbon monoxide poisoning and stage four kidney disease. (Dkt. #199 at 5). Thomas further claims to have been diagnosed with an unspecified terminal illness. (Dkt. #199 at 4). Thomas also now alleges that, in addition to requiring the full-time use of exogenous oxygen, she also requires the use of a wheelchair. (Dkt. #199 at 5). Thomas contends that her underlying medical conditions, combined with the risks created by the

2

COVID-19 pandemic, present an extraordinary and compelling reason warranting a reduction of her sentence. (Dkt. #199 at 5).

## II. DISCUSSION

### A. 18 U.S.C. § 3582(c)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c). One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A)(i), commonly referred to as compassionate release.

Section 3582(c) was enacted as part of the Sentencing Reform Act of 1984. Under the first iteration of the relevant provision, district courts were authorized to grant sentence reductions on the motion of the Director of the Bureau of Prisons ("BOP") if the BOP could establish the following conditions: (1) extraordinary and compelling reasons warranted a sentence reduction; (2) a reduction would be consistent with the applicable policy statements of the Sentencing Commission; and (3) a sentence reduction was warranted after consideration of the sentencing factors in 18 U.S.C. § 3553(a). *United State v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021). Notably, Congress did not define "extraordinary and compelling reasons" or otherwise indicate how that phrase should be interpreted other than to specify that rehabilitation alone did not qualify. *Id.* (quoting 28 U.S.C. § 994(t)). Instead, Congress delegated that authority to the Sentencing Commission, directing it to "describe what

3

should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

The Sentencing Commission eventually followed Congress's direction to define "extraordinary and compelling reasons" and promulgated U.S.S.G. § 1B1.13. In application note 1 to Section 1B1.13, the Sentencing Commission described what circumstances constitute "extraordinary and compelling reasons" for purposes of Section 3582(c)(1)(A)(i). U.S.S.G. § 1B1.13 cmt. n.1. The Sentencing Commission essentially created four categories of "extraordinary and compelling reasons," which can broadly be characterized as: (1) circumstances arising from certain medical conditions; (2) circumstances arising from the age of the defendant; (3) issues arising from the defendant's family circumstances; and (4) other reasons that the BOP agrees are extraordinary and compelling in a specific case. *Id*. And because Section 3582(c)(1)(A) requires that any sentence reduction be consistent with the Sentencing Commission's policy statements issued pursuant to Section 994(t), the policy statements contained in Section 1B1.13 were binding on district courts considering Section 3582(c)(1)(A)(i) motions. *See United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (holding that the Sentencing Commission's policy statements issued pursuant to 28 U.S.C. § 994 are binding on district courts when considering motions brought under 18 U.S.C. § 3582(c)).

In 2018, Congress amended Section 3582(c)(1)(A) with the passage of the First Step Act. The amendment provided that, in cases where the BOP does not file a compassionate-release motion on the prisoner's behalf, the prisoner may personally

4

file a motion for compassionate release. *Shkambi*, 993 F.3d at 391–92. This was the First Step Act's only change to the compassionate-release framework. *Id.* at 391. Thus, while prisoners, in addition to the BOP, may now file motions for compassionate release, Section 3582(c)(1)(A)(i)'s substantive requirements that govern a prisoner's entitlement to release remain the same. *See id.* at 392 ("But the [First Step Act] left undisturbed the other three § 3582 requirements.").

Following the First Step Act's expansion of who may file a motion under Section 3582(c)(1)(A), courts were confronted with the question of whether the Sentencing Commission's definition of "extraordinary and compelling reasons," which was promulgated prior to the First Step Act when such motions could only be filed by the BOP, remained binding on district courts when considering compassionate-release motions. The Fifth Circuit addressed this question in *Shkambi*, holding that, while U.S.S.G. § 1B1.13 is a policy statement applicable to Section 3582(c)(1)(A) motions filed by the BOP, it is inapplicable to Section 3582(c)(1)(A) motions filed by prisoners. 993 F.3d at 392.[1] Accordingly, while U.S.S.G. § 1B1.13 dictates the meaning of "extraordinary and compelling reasons" when a Section 3582(c)(1)(A) motion is filed by the BOP on a prisoner's behalf, it does not do so when, as here, a Section 3582(c)(1)(A) motion is filed by a prisoner himself. *See id.* ("[T]he policy

---

[1] Several other circuits have similarly concluded that U.S.S.G. § 1B1.13 is inapplicable to such compassionate-release motions filed by prisoners. *See, e.g.*, *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). *But see United States v. Bryant*, 996 F.3d 1243, 1248 (11th Cir. 2021) (holding that U.S.S.G. § 1B1.13 is an applicable, binding policy statement for all Section 3582(c)(1)(A) motions).

statement continues to govern where it says it governs—on the motion of the Director of the Bureau of Prisons. But it does not govern here—on the newly authorized motion of a prisoner." (quotation omitted)). Therefore, when a prisoner files a compassionate-release motion, courts must determine what constitutes an "extraordinary and compelling reason" under Section 3582(c)(1)(A)(i).

## B. Extraordinary and Compelling Reasons

Though the Court is not bound by the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13 and its accompanying application notes when considering compassionate-release motions filed by prisoners, the policy statement is not wholly irrelevant. Courts should still look to the policy statement for guidance in determining what constitute "extraordinary and compelling reasons" for a sentence reduction when a prisoner files a compassionate-release motion. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to the United States Sentencing Guidelines ('U.S.S.G.') § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *see also, e.g.*, *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused."). Using the policy statement as guidance when considering prisoner-filed compassionate-release motions is warranted for several reasons.

6

First, whether a compassionate-release motion is filed by the BOP or a defendant, the statutory standard governing the motion is the same. Section 3582(c)(1)(A) provides that its requirements for obtaining a sentence reduction apply "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant." 18 U.S.C. § 3582(c)(1)(A). And as noted above, the First Step Act did not change Section 3582(c)(1)(A)'s substantive requirements. Thus, a policy statement defining "extraordinary and compelling reasons" in the context of BOP-filed motions necessarily informs what "extraordinary and compelling" means in the context of defendant-filed motions because the same standard governs both motions. In other words, Section 3582(c)(1)(A)(i)'s "extraordinary and compelling reasons" phrase does not implicate shifting substantive meanings depending on who invokes the statute.

Congress's application of a single standard to govern Section 3582(c)(1)(A) motions—whether filed by the BOP or by defendants—is also evident in Section 3582(c)(1)(A)'s exhaustion requirement. Before a prisoner can file a compassionate-release motion, he must first present his case to the BOP and request that the BOP file the motion on his behalf. *See* 18 U.S.C. § 3582(c)(1)(A). Fulfilling this exhaustion requirement would be a nonsensical exercise if the standard governing the defendant's entitlement to release varied significantly depending on whether the BOP grants the defendant's request. Defendants would request compassionate release based on the interpretation of "extraordinary and compelling reasons" applicable to their motions while the BOP would evaluate such requests

based on the interpretation applicable to its motions. The fact that defendants must first ask the BOP to file their compassionate-release motions before doing it themselves indicates that Congress intended no significant substantive distinction between BOP-filed and defendant-filed motions under Section 3582(c)(1)(A).

Using U.S.S.G. § 1B1.13 and its commentary as guidance to determine what is extraordinary and compelling in defendant-filed motions is further warranted by Congress's mandate that the Sentencing Commission, rather than courts, determine what constitute "extraordinary and compelling reasons" warranting a sentence reduction under Section 3582(c)(1)(A)(i). *See* 28 U.S.C. § 994(t) (directing the Sentencing Commission to issue policy statements describing what constitute extraordinary and compelling reasons under Section 3582(c)(1)(A)); *Garcia*, 655 F.3d at 435 (concluding that Congress intended the Sentencing Commission's policy statements to be binding on courts in Section 3582(c) proceedings). To be sure, the Fifth Circuit has held that there is no binding policy statement because the Sentencing Commission has yet to amend its guidelines to account for the fact that defendants can now file compassionate-release motions. *See Shkambi*, 993 F.3d at 392. But Section 1B1.13 and its commentary still provide substantial insight into what the Sentencing Commission considers to be an "extraordinary and compelling reason" because the statutory standard the Sentencing Commission was applying when it promulgated Section 1B1.13 has not changed.

Nor does Section 1B1.13 become useless as guidance for defendant-filed compassionate-release motions simply because its terms state that it applies to

8

motions brought by the Director of the BOP. Section 1B1.13 and its accompanying application notes "provide a working definition of 'extraordinary and compelling reasons'"—the standard that applies equally to BOP motions and prisoner motions. *Gunn*, 980 F.3d at 1180. Indeed, when the Sentencing Commission promulgated Section 1B1.13, its intent was not to specify a unique standard for BOP motions but rather to define "extraordinary and compelling reasons" for purposes of Section 3582(c)(1)(A). 28 U.S.C. § 994(t) does not direct the Sentencing Commission to adopt standards governing prisoner motions and standards governing BOP motions. Rather, Section 994(t) directs the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under Section 3582(c)(1)(A). And as the Sentencing Commission itself has explained, U.S.S.G. § 1B1.13 and its application notes constitute the Commission's implementation of Section 994(t)'s directive. *See* U.S.S.G. § 1B1.13 cmt. background ("This policy statement implements 28 U.S.C. § 994(a)(2) and (t)."). Because Section 3582(c)(1)(A) governs BOP motions and prisoner motions alike, the Sentencing Commission's definition of Section 3582(c)(1)(A)'s terms is instructive when considering a prisoner's motion brought under Section 3582(c)(1)(A)(i).

For these reasons, the Court concludes that the "extraordinary and compelling reasons" applicable to defendant-filed motions are those that are similar in kind and scope to those listed in U.S.S.G. § 1B1.13's application notes. Therefore, any proffered "extraordinary and compelling reason" that is not contained in the Sentencing Commission's policy statement should nonetheless be similar to those reasons in

9

order to warrant release under the statute. In this sense, the Court's analysis of whether Thomas has presented "extraordinary and compelling reasons" warranting the sentence reduction he seeks will be significantly guided, though not strictly bound, by the Sentencing Commission's description in U.S.S.G. § 1B1.13 and the accompanying application notes.

### C. Thomas's Motion

#### 1. Exhaustion

As an initial matter, the Court may consider Thomas's compassionate-release motion only if she first meets Section 3582(c)(1)(A)'s exhaustion requirement. The statute provides that a court may not consider any modification to a defendant's sentence under Section 3582(c)(1)(A)(i) unless a motion for such a modification is made by the Director of the BOP or by a defendant who has fully exhausted his or her administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Thomas requested compassionate release from the warden of her facility over her concern of COVID-19 coupled with her underlying health conditions, specifically COPD, asthma, emphysema, "heart troubles," and cirrhosis of the liver. (Dkt. #214-1 at 2). In internally appealing the warden's denial of her request, Thomas asserted the additional grounds of seizures, obesity, high blood pressure, and that she is oxygen dependent. (Dkt. #199-4 at 8, 11). These internal appeals were also denied. Before this Court, Thomas asserts the same grounds noted above, in addition to the new grounds of an unspecified terminal illness, carbon monoxide poisoning and stage four kidney disease, as well as dependency on a wheelchair. (Dkt. #199 at 4–5).

The Government contends that Thomas has satisfied the administrative exhaustion requirement only with respect to her claims regarding COPD, asthma, emphysema, heart trouble, and cirrhosis of the liver, as these were the claims Thomas submitted to her warden. (Dkt. #201 at 2). To be sure, the Court agrees that these claims are indeed properly exhausted. First, concerning these grounds, more than thirty days has passed since Thomas submitted her initial request to her warden. Thus, Thomas has met the exhaustion requirement with respect to her request for compassionate release based on those claims. *See* 18 U.S.C. § 3582(c)(1)(A) (stating that a defendant may file a compassionate-release motion after "the lapse of 30 days from the receipt of [a compassionate-release] request by the warden of the defendant's facility").

The Court notes that while Thomas did not raise the issues of seizures, obesity, high blood pressure, and that she is oxygen dependent in her initial request to the warden, she did raise these grounds in her internal administrative appeal. (Dkt. #199-4 at 8, 11). And even though the administrative appeal only viewed Thomas's arguments as being concerned with COVID-19, *see* (Dkt. #199-4 at 10) (Central Office Administrative Remedy Appeal stating that Thomas requested "a compassionate release due to [her] vulnerability to COVID-19 infection"), the Court will nonetheless assume without deciding that these grounds are also properly exhausted.

However, the Court concludes that Thomas has not exhausted the grounds first asserted in the instant motion, namely, that she suffers from an unspecified terminal

illness, carbon monoxide poisoning, stage four kidney disease, and has a dependency on a wheelchair. *See, e.g., United States v. Mendoza-Garibay*, No. 4:13-CR-281, 2023 WL 307459, at *5 (E.D. Tex. Jan. 18, 2023) ("As this Court has previously stated, to exhaust her administrative remedies, a prisoner must first present to the BOP the *same grounds warranting release* that the prisoner urges in her motion." (quotations omitted)). Therefore, any claims to relief based on these reasons are denied for failure properly to exhaust those grounds with the BOP.

### 2. "Extraordinary and Compelling Reasons" Warranting Release

However, even considering all of Thomas's claims presented in the instant motion, it must still be denied because Thomas has failed to present "extraordinary and compelling reasons" within the meaning of Section 3582(c)(1)(A)(i). Thomas argues that her present medical conditions coupled with the COVID-19 pandemic constitute extraordinary and compelling reasons warranting her release. As explained above, the Court first looks to the Sentencing Commission's definition of "extraordinary and compelling reasons" contained in U.S.S.G. § 1B1.13 and its application notes.

Thomas's circumstances do not fall within the first category of "extraordinary and compelling reasons" identified by the Sentencing Commission—circumstances arising from certain medical conditions. Section 1B1.13's application note 1 provides the following circumstances under which a defendant's medical condition may warrant a sentence reduction:

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period)

12

> is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
> > (I) suffering from a serious physical or medical condition,
> > (II) suffering from a serious functional or cognitive impairment, or
> > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n.1(A). Although Thomas asserts that she is presently suffering from complex chronic health conditions, an unspecified terminal illness, and that she cannot walk or bathe without assistance, she does not show that these conditions render her unable to engage in self-care. The Court first notes that, contrary to the Government's representations, Thomas has in fact received several oxygen treatments since her arrest. *Compare* (Dkt. #201 at 2) (Government response arguing that Thomas "said that her pulmonary issues require the use of inhaler and oxygen; however, she had not received her oxygen treatments since her arrest, because of her refusal to be placed in medial [sic] isolation while in custody."), *with* (Dkt. #199-1 at 16) (medical record stating "$O_2$ via NC applied at 3L/min and $O_2$ sat increased to 96%"); (Dkt. #199-1 at 46) (medical record stating "Patient's nasal cannula switched from portable $O_2$ to wall $O_2$."); (Dkt. #199-1 at 63) (medical record stating "$O_2$ dependent."). However, nothing in the submitted medical record supports the conclusion that Thomas cannot engage in self-care, or that she suffers from any form of terminal illness. To the contrary, the extensive medical records all show that

Thomas is effectively managing her conditions through the medical support she is receiving through the prison. *See, e.g.,* (Dkt. #199-1 at 63) (medical record dated May 13, 2021, indicating that Thomas is able "to perform ADLs [activities of daily life] independently"); (Dkt. #199-1 at 113–14) (medical record dated March 8, 2021 noting that Thomas "states she can bathe herself," is "in no apparent distress," and that Thomas was "discharge[d] back to her unit in stable condition"); (Dkt. #199-1 at 215) (medical record dated August 23, 2021, indicating that Thomas had a "[n]ormal renal ultrasound" and "[n]ormal kidneys"); (Dkt. #199-1 at 224) (medical record dated July 23, 2021, indicating that Thomas "is alert, awake and oriented x3 and does not appear to be in respiratory distress"); (Dkt. #199-1 at 240) (medical record dated May 5, 2021, stating that Thomas "feels comfortable being discharged back to prison at this time").

Furthermore, any suggestion that Thomas's underlying medical conditions, coupled with the risk of contracting COVID-19, substantially diminish her ability to provide self-care due to her conditions of confinement does not comport with the plain text of application note 1 to U.S.S.G. § 1B1.13. The note is written in the present tense. That is, the defendant must be presently suffering from a serious medical condition and such condition must presently diminish the defendant's capacity to engage in self-care in the environment of a correctional facility. As described above, Thomas's medical conditions alone fail to satisfy that standard. And in connection with COVID-19, Thomas's argument relies on the risk of her contracting COVID-19 in the future and the risk that COVID-19 would then have serious effects on her, which argument also fails.

Because the Fifth Circuit has held that the Sentencing Commission's definition of "extraordinary and compelling reasons" governs Section 3582(c)(1)(A)(i) motions only when such motions are filed by the BOP, Thomas's failure to show that her circumstances fall within those described by the Sentencing Commission is not fatal to her motion. But as discussed above, the Court still looks to the Sentencing Commission's definition of "extraordinary and compelling reasons" as significant guidance in construing that phrase as to defendant-filed motions. *See Thompson*, 984 F.3d at 433 (noting that the Sentencing Commission's commentary "informs [the] analysis" as to what constitutes "extraordinary and compelling reasons" for defendant-filed compassionate-release motions). Accordingly, Thomas's allegedly extraordinary and compelling reasons should be similar in kind to those enumerated by the Sentencing Commission.

The reasons Thomas asserts as a basis for her release are unlike any of the reasons enumerated by the Sentencing Commission in its commentary to U.S.S.G. § 1B1.13. The circumstances in application note 1 all include significant hardships that are presently affecting the defendant, including where a medical condition or the aging process is presently causing the significant health problems or where the defendant has minor children or an incapacitated spouse who are presently left without a caregiver because of the defendant's incarceration.

The Court does not downplay Thomas's health issues or suggest that her concerns about COVID-19 are unreasonable. But Thomas's motion does not identify any specific, significant hardship that she *presently* faces that rises to the level of an

extraordinary and compelling reason. Rather, beyond the fact of her noted chronic illnesses, the motion raises only the concern that Thomas is at risk for developing a significant hardship in the future *if* she contracts COVID-19. There is no analogous provision in Section 1B1.13 or its commentary where the increased *risk* of hardship caused by incarceration is considered an "extraordinary and compelling reason" as that phrase is used in 18 U.S.C. § 3582(c)(1)(A)(i).

Beyond the Sentencing Commission's nonbinding guidance, there is an additional reason why Thomas has failed to present an extraordinary and compelling reason for early release: she has received a vaccine that is highly effective against COVID-19 and its variants. (Dkt. #199-1 at 6). Shaun J. Grannis et al., *Interim Estimates of COVID-19 Vaccine Effectiveness Against COVID-19-Associated Emergency Department or Urgent Care Clinic Encounters and Hospitalizations Among Adults During SARS-CoV-2 B.1.617.2 (Delta) Variant Predominance*, 70 MORBIDITY & MORTALITY WEEKLY REPORT 1291, 1292 (2021). For most prisoners, the availability of a COVID-19 vaccine "makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 802 (7th Cir. 2021); *see also United States v. Baeza-Vargas*, 532 F.Supp.3d 840, 845–46 (D. Ariz. 2021) (collecting cases explaining that vaccination mitigates the risk from COVID-19 to such an extent that COVID-19, coupled with underlying medical conditions, does not present an extraordinary and compelling reason to grant compassionate release). Thus, the risk Thomas faces from the virus, whether considered alone or in conjunction with her underlying conditions,

16

does not constitute an extraordinary and compelling reason within the meaning of Section 3582(c)(1)(A)(i).

Moreover, Thomas's concerns in large measure turn on her assertion that the United States remains in the midst of a COVID-19 pandemic. This is no longer true. Both international and domestic health authorities, particularly the World Health Organization,[2] the United States Centers for Disease Control and Prevention,[3] and the federal government,[4] have made clear that the COVID-19 pandemic has ended.[5] Thus, the premise of Thomas's claim—namely, that the COVID-19 pandemic itself constitutes an "extraordinary and compelling reason" for her compassionate release—lacks any foundation going forward. Likewise, any residual risk that Thomas faces from the virus is too speculative to constitute an extraordinary and compelling reason for release within the meaning of Section 3582(c)(1)(A)(i). And because

---

[2] *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV]; Aria Bendix, *WHO Declares End to Covid Global Health Emergency*, NBC NEWS (May 5, 2023), https://www.nbcnews.com/health/health-news/who-ends-covid-global-health-emergency-rcna83046 [https://perma.cc/ZP2G-K7TH].

[3] *End of the Federal COVID-19 Public Health Emergency (PHE) Declaration*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[4] *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[5] *See also United States v. Ford*, No. 1:16-CR-19-HAB, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination." (quotations omitted)).

Section 3582(c)(1)(a)(i) authorizes sentence reductions only for "extraordinary and compelling reasons" within the meaning of the statute, Thomas's motion cannot be granted.

For the foregoing reasons, neither Thomas's COVID-19-related concerns nor her underlying medical conditions constitute extraordinary and compelling reasons within the meaning of Section 3582(c)(1)(A)(i). Because Section 3582(c)(1)(a)(i) authorizes sentence reductions only for "extraordinary and compelling reasons" within the meaning of the statute, the Court must deny Thomas's motion.

### 3. Section 3553(a) Factors

Even if Thomas could establish that "extraordinary and compelling reasons" warrant her release, her motion for compassionate release would still fail because the sentencing factors under 18 U.S.C. § 3553(a) weigh against her. Thomas has failed to show how releasing her before she serves the full term of her sentence would align with the statutory sentencing factors—notably the seriousness of Thomas's offense, the need to promote respect for the law, the need to provide just punishment for the offense, and the need to deter others from similar criminality. 18 U.S.C. § 3553(a).

Thomas continues to present a danger to the community based on the totality of the circumstances. *See United States v. Rollins*, 53 F.4th 353, 355, 359 (5th Cir. 2022) (affirming denial of compassionate release to a defendant who required hemicorporectomy and round-the-clock care due to defendant representing a present danger to the community, noting that "the abuse-of-discretion standard is a demanding one"). Thomas was a key participant in a significant drug-trafficking conspiracy. (Dkt. #155 at 5–6). The police investigation exposed that Thomas

18

recruited co-defendants to follow her from Louisiana to Texas for the purpose of purchasing methamphetamine. (Dkt. #155 at 5 ¶ 10). Thomas pleaded guilty and stipulated the conspiracy involved 45 kilograms or more of a mixture or substance containing a detectable amount of methamphetamine or 4.5 kilograms or more of methamphetamine (actual). (Dkt. #155 at 6 ¶ 12). She further stipulated that her role in the conspiracy was to supply co-conspirators with kilogram quantities of methamphetamine from various sources, which was imported from Mexico, for distribution in the Eastern District of Texas. (Dkt. #155 at 6 ¶ 12). Thomas fails to show how her release after serving approximately three years of a fifteen-year term reflects the seriousness of her offense, promotes respect for the law, and provides just punishment. *See* 18 U.S.C. § 3553(a)(2)(A).

Considering all the relevant factors, the Court concludes that the sentence originally imposed remains sufficient, but not greater than necessary, to comply with the purposes of Section 3553(a). Thomas's motion is also denied on this basis.

**D. The Government's Motion**

Finally, the Government has submitted certain of Thomas's medical records in connection with its response to Thomas's motion for compassionate release, and the Government requests that the Court allow the Government to file those records under seal. While the Government has failed to argue why these records should be sealed, the Court will nonetheless grant the motion. The Court has reviewed the record and finds that each of the documents requested to be sealed contains sensitive, personal information about Thomas, such that the public's common law right of access to

judicial records is outweighed by Thomas's interests favoring nondisclosure. *See, e.g., June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022) (quoting *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021)).

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendant Donna Thomas's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A), (Dkt. #199), is **DENIED**.

It is further **ORDERED** that the Government's Motion to Seal, (Dkt. #200), is **GRANTED**.

**So ORDERED and SIGNED this 16th day of August, 2023.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE